FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

2006 APR 12 A 8: 31

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

H.A.L., J.H.L, S.L.L., minor children by and
through their parents and next friends; BRIAN
JOSEPH LEWIS, RACHEL DANETTE
LEWIS,

          Plaintiffs,

-vs-                                               Case No.  3:05-cv-873-J-20MMH

ED FOLTZ, individually, DEBORAH JONES,
individually and VIRGINIA JORDAN,
individually,

          Defendants.
_____/

## ORDER

Before the Court are Motions to Dismiss filed by all Defendants.  Specifically before the

Court is Defendant Ed Foltz's Motion to Dismiss (Doc. No. 15, filed October 5, 2005) and Plaintiffs'

Response (Doc. No. 26, filed November 11, 2006), and Defendant Deborah Jones's Motion to

Dismiss (Doc. No. 17, filed October 5, 2005) and Plaintiffs' Response (Doc. No. 17, filed November

10, 2005).  Additionally, a Motion to Dismiss was filed by Defendant Virginia Jordan (Doc. No. 42,

filed March 14, 2006), and Plaintiffs responded (Doc. Nos. 48, filed April 7, 2006).

**Factual Background**

Generally, this case involves child-on-child sexual assault that occurred in Mr. and Mrs.

Shick's family foster home, which was licensed by the Florida Department of Children and Family

Services ("the Department").  At the time the children were placed in the Shick foster home in March

1999, Plaintiff H.A.L. was three years old, S.L.L. was eight years old, and J.H.L. was six years old.

While placed in the Shick foster home, the First Amended Complaint alleges that the young siblings were repeatedly sexually abused by older male children: R.S., an adopted foster child of the Shicks, and D.C., a foster child residing in the Shick foster home. Plaintiffs also allege that both R.S. and D.C. had known histories of sexually aggressive behavior.

As a result of the sexual abuse they endured, Plaintiffs, through their next friends and adoptive parents, Brian Joseph Lewis and Rachel Danette Lewis, instituted this 42 U.S.C. § 1983 claim for violations of their Fourteenth Amendment liberty interest to be free from unreasonable risk of harm while in State care. Their claims are brought against Ed Foltz, the District Re-licensing Counselor, Deborah Jones, the District Re-licensing Supervisor, and Virginia Jordan, the Family Services Counselor assigned to the Plaintiffs' case. All three Defendants were employed by the Department during the relevant time and are being sued in their individual capacities.

**<u>Standard of Review</u>**

In deciding a Defendant's motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff. <u>See</u> <u>e.g.</u>, <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974). A complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Bank v. Pitt</u>, 928 F.2d 1108, 1112 (11th Cir. 1991). Where no construction of the factual allegations will support the cause of action, however, the Court may dismiss the complaint as a matter of law. <u>Marshall County Board of Education v. Marshall County Gas District</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).

The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." <u>Conley</u>, 355 U.S. at 47. All that is required is "a short and plain

statement of the claim." Fed. R. Civ. P. 8(a)(2).  The Federal Rules have adopted this simplified pleading approach because of "the liberal opportunity for discovery and other pretrial procedures . . . to disclose more precisely the basis of both claim and defense . . . ." Conley, 355 U.S. at 47-48. The purpose of notice pleading is to reach a decision on the merits and avoid turning pleading into "a game of skill in which one misstep by counsel may be decisive to the outcome." Id. at 48.

Although a complaint should consist of a short and plain statement of the claim, a complaint of deliberate indifference filed on behalf of a child in foster care must adhere to the "rule that heightened specificity is required in civil rights actions against public officials who may be entitled to qualified immunity." Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001). "The complaint must allege the relevant facts with some specificity." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).

**Analysis**

Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 and allege violations of H.A.L., J.H.L., and S.L.L.'s Fourteenth Amendment interest to be safe from unreasonable risk of harm while in state custody.  Defendants argue that Plaintiffs have failed to state a § 1983 claim because they have not sufficiently alleged deliberate indifference on the part of Defendants.  Defendants also assert a defense of qualified immunity.

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " Gonzalez, 325 F.3d at 1233 (quoting Hope v. Pelzer, 536 U.S. 730, 731 (2002)).  The Eleventh Circuit has further elaborated on this standard and has held:

> [f]or qualified immunity to be surrendered, preexisting law must dictate, that is truly compel, (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.

Lassiter v. Ala. A&M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc). Essentially, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). It is a plaintiff's burden to show that defendant's actions violated clearly established law. Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983). The Eleventh Circuit has pointed out that a plaintiff does not met his burden by merely stating a constitutional claim using the most general terms. See Dartland v. Metro. Dade County, 866 F.2d 1321, 1323 (11th Cir. 1989) (quoting Azeez v. Fairman, 795 F.2d 1296, 1301 (7th Cir. 1986)).

In order to determine the applicability of qualified immunity, the U.S. Supreme Court has established a two-part inquiry. Saucier v. Katz, 533 U.S. 194, 201 (2001). First, the Court must consider whether the plaintiff's allegations, taken as true, establish a constitutional violation. Id., see Behrens v. Regier, 422 F.3d 1255, 1258 n. 7 (11th Cir. 2005). Secondly, if such allegations do establish a constitutional violation, the Court must determine whether the right was "clearly established." Saucier, 533 U.S. at 201. If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.

In terms of whether Plaintiffs' allegations establish a constitutional violation, the Eleventh Circuit has held that a child involuntarily placed in foster care has a Fourteenth Amendment liberty interest to be from harm and that the state has a corresponding duty to protect such children from harm. Ray v. Foltz, 370 F.3d 1079, 1082 (11th Cir. 2004); Taylor v. Ledbetter, 818 F.2d 791, 794-

95 (11th Cir. 1987) (en banc) . Based on the alleged facts, it is clear that the child-on-child sexual abuse injuries suffered by Plaintiffs H.A.L., J.H.L., and S.L.L. "violated [their] well-established constitutional right . . . to be reasonably safe in [their] foster home." Ray, 370 F.3d at 1083. Nonetheless, in order to sustain a § 1983 claim, Plaintiffs must also claim that each Defendant was "deliberately indifferent" to the violation of this right. Id. (quoting Taylor, 818 F.2d at 797).

"[I]n order to establish deliberate indifference, plaintiffs must be able to allege (and prove at trial) that the defendant (1) was objectively aware of a risk of serious harm; (2) recklessly disregarded the risk of harm; and (3) this conduct was more than merely negligent." Ray, 370 F.3d at 1083 (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)). More specifically, "[a] child abused while in foster care, will be faced with the difficult problem of showing actual knowledge of abuse or that agency personnel deliberately failed to learn what was occurring in the foster home." Id. (quoting Taylor, 818 F.2d at 796). This Court examines the Amended Complaint, viewed in the light most favorable to the Plaintiffs, to evaluate if Plaintiffs H.A.L., J.H.L., and S.L.L. have claimed that the Defendants had actual knowledge or deliberately failed to learn of the serious risk of child-on-child sexual abuse to these foster children. Id. at 1083-84.

**Discussion**

Plaintiffs allege that Department employees, including Defendants Foltz, Jones and Jordan, knew of the cyclical nature of child-on-child sexual abuse and the probability that children who had histories of sexual abuse and/or perpetration were likely to be sexually aggressive. Additionally, they were aware of Department studies that indicated such children were extremely vulnerable to further sexual assault and likely to assault others. Plaintiffs point to a 1991 study, titled "A Study of Sexual Assault Among Foster Care Children in Florida" (hereinafter "1991 Study"), which

confirmed that children in foster care were sexually abusing other foster care children in alarming numbers.  Specifically, the 1991 Study noted: "This cyclical nature of abuse places sexually traumatized children at high risk for engaging in sexually assaultive behaviors."

As a result of the 1991 Study, the Department promulgated Florida Administrative Code Rule 10M-6.132 (subsequently renumbered 65C-13.012), titled "Prevention and Management of Sexual Assault in Foster Care" (hereinafter "Prevention of Sexual Assault Rule"). The Prevention of Sexual Assault Rule required a needs and risk assessment prior to placement to "alert professionals and caretakers to the necessary precautions to take concerning a vulnerable child or one prone to victimizing other children."  The Prevention of Sexual Assault Rule called for safeguards to be put in place in cases of child-on-child sexual abuse.  Specifically, the Department was directed to: (1) ensure that children who sexually abused or victimized others were the youngest placed in a home; (2) refer the perpetration and victim for mental health assessment and therapy, if needed, within 10 days of the incidence of sexual assault; and (3) create a detailed preventive plan of care which considered the need to place children in private bedrooms; limit access to other children's bedrooms; establish rules regarding bathroom use; establish dress codes; establish reasonable guidelines regarding the manner and extent of expressions of affection; and establish reasonable guidelines concerning which children could be left alone together and under what circumstances.

The Prevention of Sexual Assault Rule also set up a reporting procedure designed to ensure appropriate communication between the foster care, protective investigations, placement and licensing units, so that an appropriate investigation could be performed and services could be put in place when there were allegations of child-on-child sexual abuse in a foster home. Plaintiffs indicate that the Rule directed the use of a Comprehensive Client Risk Management form to report client-on-

client sexual assault, seduction or exploitation.  On March 8, 1999, the Department adopted CFOP 175-88, titled "The Prevention and Placement of Child Abuse Victims and Aggressors Involved in Child on Chile Sexual Abuse, Sexual Assault, Seduction or Exploitation in Substitute Care."  CFOP 175-88 established procedures and safeguards for identifying and assisting children who were known to be sexually reactive, and was designed to ensure that the needs of children in substitute care are taken into account when determining assessments, services and placements.   The operating procedure noted that careful attention needed to be paid to the needs of children in substitute care and the associated risk factors to reduce the potential for further child-on-child sexual abuse, sexual assault, seduction or exploitation. Plaintiffs allege that the Prevention of Sexual Assault Rule and the CFOP 175-88 were knowingly violated at the Shick foster home by Defendants Foltz, Jones and Jordan.

In addition to procedures and safeguards for identifying and preventing child-on-child sexual abuse, there were regulations designed to prevent overcrowding in foster homes.   Florida Administrative Code Rule 10M-6.025 (renumbered 65C-13.011) provided:

> Generally there should be no more than five children in a home, including the substitute care parents' own children.  These criteria may be varied for good cause and with the written approval of the Family Safety and Preservation program office. If a family has the emotional and physical capacity to nurture more than five children, it is not against policy to establish a capacity above the rule of five.  A family must have the physical room and emotional capacity to provide this care.

Moreover, the Department's Licensing Manual required the following to be considered prior to the granting of a waiver in order to place a child in a home, which was already at maximum capacity:

> (a) Is this the only resource for the children meeting placement?  Have all available homes been considered and has it been determined that this home is the most appropriate?
> (b) Can the home physically accommodate the additional child/children?  This includes a bed, adequate closet space and room for personal possessions

(c) Can the substitute parents meet the needs of another child or children?  Is help, relief, or other support available to the family?  Is the family managing well with the children already in the home?  Will the addition of another child/children affect the quality of care being given to the children currently in the home?

(d) Can the children already in placement in the home accept additional children? Are there any children in the home who are particularly vulnerable?  Can those children be adequately protected?

(e) What is the planned duration of the new capacity?

Plaintiffs allege that the Shick foster home was consistently relicensed at capacities which exceeded acceptable physical limitations and safety considerations and with knowledge that safeguards from child-on-child sexual abuse were not in place.  Additionally, Plaintiffs allege that Defendants knew that at least two children in the Shick home had histories of sexually reactive behaviors and/or perpetration and that there was not a safety plan in place.  As a result of this knowledge and known deficiencies, Plaintiffs were left with foster parents who could not adequately supervise them to ensure their safety.

In 1996, Mr. and Mrs. Shick applied to be and were provisionally licensed by the Department to provide foster care in their home.  On October 18, 1996, the Department licensed Mr. and Mrs. Shick as foster parents to provide shelter and/ or foster care to children in their three-bedroom home. The Shicks' natural daughter used one bedroom and their natural son slept in the garage, leaving one bedroom available for use by the foster children placed in their home.

On November 15, 1996, Plaintiffs, along with their siblings, were removed from the home of their natural parents and placed in a shelter care by the Department due to allegations of abuse and neglect.[1]  On March 10, 1997, Defendant Jordan was advised that J.H.L. had reported that her older sister, R.A.L., had been sexually abused by their natural father.  Defendant Jordan knew that R.A.L.

---

[1]While Plaintiffs were removed from home of their natural parents in November of 1996, the Complaint alleges that they were not placed with the Shicks until March of 1999.

was residing with her younger siblings, S.L.L. and M.E.L. at the time. Defendant Jordan failed to institute a plan of care or safety plan for any of the children to ensure their safety and ensure that they would not be reabused or victimized other children.

On July 8, 1997, Defendant Jordan was advised that S.L.L. had been sexually acting out with a male child at his summer camp.   And on August 29, 1997, Defendant Jordan was advised that S.L.L. had alleged that he had been sexually abused by a foster child at his foster home. At both the time of both incidents Defendant Jordan knew that S.L.L. was residing with other foster children at his foster care placement. And after both incidents Defendant Jordan failed to institute a plan of care or safety plan for any of the children to ensure their safety and ensure that they would not be reabused or victimized other children.

On October 8, 1997, Defendant Foltz learned that  Mr. and Mrs. Shick had three foster children removed from their home due to the Shicks' inability to manage the children's emotional and behavioral problems.  Armed with this knowledge, Foltz still recommended the Shick foster home be relicensed for three foster children.  In August 1998, two male foster children, R.S., age eleven, and J.S., age nine, were placed in the Shick foster home.  Plaintiffs allege that either prior to or as a result of their placement in the Shick foster home, R.S. and J.S. became sexually aggressive. R.S. and J.S. were eventually adopted by the Shicks in January 1999, and continued to reside in the Shick home. At the time R.S. and J.S. were placed in the Shick foster home, D.C. who was approximately fourteen years of age, was already residing in the foster home.  Plaintiffs allege that either prior to or as a result of his placement in the Shick foster home, D.C. became sexually aggressive.  Prior to coming to foster care, Plaintiffs suggest that R.S., J.S. and D.C. may have been sexually abused by an adult.

On January 4, 1999, the Department issued an Amended Certificate of License for the Shick foster home, limiting the capacity to two (2) foster children. At that time, the Shicks' natural child and two adoptive children, R.S. and J.S. were residing in the home. In early 1999, Defendant Foltz learned that R.S. had sexually acted out with J.S., a foster/adoptive child in the Shick home.

At least two of the Plaintiffs arrived in the Shick home in March of 1999. On March 5, 1999, H.A.L., who was three-years old, and S.L.L., who was eight-years old, were placed in the Shick foster home. The Amended Complaint states that J.H.L., who was six years old, was placed in the Shick foster home in 1999 for respite care. However, the Complaint does not indicate which month in 1999 this placement was completed.[2] At the time of H.A.L.'s and S.L.L.'s placement in the Shick foster home, Defendant Jordan knew there were at least three other older foster and/or adoptive children already residing in that home, including R.S., J.S., and D.C.  Plaintiffs allege that Defendant Jordan failed to perform a background check on all children in the Shick foster home and/or disregarded adverse information about the sexual abuse/ perpetration histories regarding the other children already residing in the home.

In September 1999, Defendants Foltz and Jones completed the relicensure of the Shick foster home and documented the child-on-child sexual assault incidents between R.S. and J.S. Plaintiffs allege that Defendants Foltz and Jones knew that H.A.L. and S.L.L. were residing in the home with older male sexually aggressive foster and/or adoptive children. Despite this knowledge of overcrowding in the foster home and the presence of at least two sexually aggressive foster children, Defendants Foltz and Jones recommended the relicensure of the home and an increase in the licensed

---

[2]At the time of J.H.L.'s placement, the Complaint alleges that there were at least three other older foster and/or adoptive children already residing in that home, including R.S., J.S., and D.C.

capacity. Department foster homes are licensed for a period of one year and are subject to annual re-licensing.

Although the Amended Complaint does not state when Plaintiffs were removed from the Shick home, it does allege that throughout their stay in the Shick home, they were sexually assaulted by one of Shicks' adopted sons and by another foster child, D.C. On May 31, 2001, the minor Plaintiffs were adopted by Brian Joseph Lewis and Rachel Danette Lewis. Before this time, there was no adult capable of proceeding on behalf of the minors in this matter.

**Defendant Ed Foltz**

As alleged in Plaintiffs' First Amended Complaint, Defendant Ed Foltz was employed by the Department as a counselor in the licensing unit, who had the responsibility to: (1) assess, screen and evaluate foster homes, to comply with re-licensing requirements and time frames; (2) thoroughly assess and evaluate the foster home file contents regarding open and closed foster homes abuse reports and licensing concerns in the context of the foster home's licensing history; (3) accurately and truthfully document the licensing file and yearly relicensing activity before a license renewal was recommended and transmitted to the District Administrator for signature; (4) ensure that the type and number of children in each foster home was consistent with the age, background and history of the foster parents; (5) thoroughly assess and investigate reported problems and concerns regarding the foster home; and (6) ensure that foster children were not subjected to elevated risk of harm from child-on-child sexual abuse.

Plaintiffs allegations against Foltz concern his  knowledge that children with histories of sexual abuse and perpetration were more likely to sexually act out on younger, more vulnerable children, and that children in the Shick home had histories of sexual perpetration. Defendant Foltz

argues that Plaintiffs have failed to plead facts sufficient to support a finding that he was deliberately indifferent to the minors' constitutional rights. In response, Plaintiffs assert that Defendant Foltz was on notice that placing three minor children, between the ages of three and eight, in a foster home with several older children, who had histories of sexually aggressive behavior, would put them at an elevated risk of being sexually abused.

Viewed in the light most favorable to Plaintiffs, Defendant Foltz knew the following: In October 1997, Mr. and Mrs. Shick had three foster children removed from their home due to the Shicks' inability to manage the children's emotional and behavioral problems. In early 1999, Defendant Foltz learned that R.S. had sexually acted out with J.S., a foster/adoptive child in the Shick home. And in September 1999, Defendant Foltz documented the child-on-child sexual assault incidents between R.S. and J.S. At that time Defendant Foltz knew that H.A.L. and S.L.L. were residing in the home with older male sexually aggressive foster and/or adoptive children. Notwithstanding this knowledge, Defendant Foltz recommended the relicensure of the home and an increase in the licensed capacity.

Based on these facts, Defendant Foltz knew that H.A.L. and S.L.L. were at significant risk of serious harm in the Shick home. By placing, and then leaving, H.A.L. and S.L.L. in the Shick home, Defendant Foltz was deliberately indifferent to a known risk of sexual abuse. Plaintiffs H.A.L. and S.L.L. have sufficiently stated a cause of action for a constitutional violation and a § 1983 claim. Additionally, qualified immunity is inapplicable because the allegations taken as true establish a constitutional violation and because the constitutional right was clearly established. Therefore, Defendant's Motion to Dismiss (Doc. No. 15) is **DENIED** as to Plaintiffs H.A.L. and S.L.L.

-12-

Defendant's Motion to Dismiss (Doc. No. 15) is **GRANTED** as to Plaintiff J.H.L., because Plaintiffs fail to allege when J.H.L. was placed in the Shick home. As Plaintiffs have failed to allege if J.H.L. was placed in the home before or after Defendant Foltz learned of the specific incidents of sexual assault, the pleading requirements have not been satisfied. The Amended Complaint alleges that Defendant Foltz learned that two children had sexually acted out in early 1999, and then in September 1999, he documented the child-on-child sexual assault incidents between R.S. and J.S. Plaintiff have failed to allege whether J.H.L. was in the home after Defendant Foltz became aware of the risk of sexual assault in the Shick foster home. Accordingly, Plaintiffs have not sufficiently alleged Defendant Foltz's deliberate indifference toward J.H.L.'s constitutional rights.

**Defendant Deborah Jones**

As alleged in Plaintiffs' First Amended Complaint, Defendant Deborah Jones was employed by the Department as a supervisor in the licensing unit, who had the authority and responsibility to: (1) supervise the assessment, screening and evaluation of foster homes within her area of responsibility; (2) ensure that licensing counselors complied with relicensing requirements and time frames; (3) ensure that waivers to maximum allowable foster home capacities were not granted in a manner that placed children in overcrowded, group care type settings that were unsuitable to their developmental, emotional, and physical needs; (4) ensure that foster home file contents regarding open and closed foster home abuse reports and licensing concerns were thoroughly assessed and evaluated in the context of the foster home's licensing history and properly documented before a license renewal was recommended and transmitted to the District Administrator for signature; (5) ensure that the type and number of children in each foster home was consistent with the age, background and history of the foster parents; (6) ensure that issues and problems reported in Foster

Home inquiry forms submitted by counselors were evaluated and adequately addressed; (7) ensure that issues and problems reported in exit interviews were evaluated and adequately addressed; (8) ensure that issues and problems reported in abuse reports or foster home concerns were evaluated and adequately addressed; and (9) ensure that foster children were not subjected to elevated risk of harm from child-on-child sexual abuse.

Similar to Defendant Foltz, Deborah Jones argues that there are insufficient facts to support a § 1983 claim and that qualified immunity should apply. Plaintiffs allege that in September 1999, Defendant Jones completed the relicensure of the Shick foster home and documented the child-on-child sexual assault incidents between R.S. and J.S. At that time, Defendant Jones also knew that H.A.L. and S.L.L. were residing in the home with older male sexually aggressive foster and/or adoptive children. Yet despite the knowledge of at least two sexually aggressive foster children, Defendant Jones recommended the relicensure of the Shick home and an increase in the licensed capacity.

Based on these facts, Defendant Jones knew that H.A.L. and S.L.L. were at significant risk of serious harm from the older sexually aggressive children in the Shick home. By placing, and then leaving, H.A.L. and S.L.L. in the Shick home, Defendant Jones was deliberately indifferent to a known risk of sexual abuse. Accordingly, Plaintiffs H.A.L. and S.L.L. have sufficiently stated a cause of action for a constitutional violation and a § 1983 claim. As with Defendant Foltz, qualified immunity is inapplicable for Defendant Jones. Therefore, Defendant's Motion to Dismiss (Doc. No. 17) is **DENIED** as to Plaintiffs H.A.L. and S.L.L.

Yet, Defendant's Motion to Dismiss (Doc. No. 17) is **GRANTED** as to Plaintiff J.H.L., because Plaintiffs fail to allege when J.H.L. was placed in the Shick home. As Plaintiffs have failed

-14-

to allege if J.H.L. was placed in the home before or after Defendant Jones learned of the specific incidents of sexual assault in September of 1999, the pleading requirements have not been satisfied. Accordingly, Plaintiffs have not sufficiently alleged Defendant Jones's deliberate indifference toward J.H.L.'s constitutional rights.

### Defendant Virginia Jordan

As alleged in Plaintiffs' First Amended Complaint, Defendant Virginia Jordan was employed by the Department as a family services counselor and was assigned to the Plaintiffs' case. Defendant Jordan had the responsibility to: (1) evaluate all reports of child abuse and/or neglect on the subject child and the foster home in which Plaintiffs resided; (2) visit children in foster home placements in accordance with the requirements for children in shelter status or department custody; (3) investigate all relevant conditions of the home that might affect the child in her caseload or other children in the home; (4) report any violations of the home's operating license; (5) continually assess the adequacy and safety of a child's particular placement; (6) make appropriate referrals for evaluations or services including referrals to SATC and/or CPT; (7) establish all necessary plans of care and report all known incidents of sexual acting out occurring in foster homes; and (8) ensure that foster children were not left in dangerous conditions, including being subjected to sexual, emotional and physical abuse.

Similar to Defendants Foltz and Jones, Virginia Jordan argues that there are insufficient facts to support a § 1983 claim and that qualified immunity should apply. Plaintiffs allege that on March 10, 1997, Defendant Jordan was advised that J.H.L. had reported that her older sister, R.A.L., had been sexually abused by their natural father. Defendant Jordan knew that R.A.L. was residing with her younger siblings, S.L.L. and M.E.L. at the time. Defendant Jordan failed to institute a plan of

care or safety plan for any of the children to ensure their safety and ensure that they would not be reabused or victimized other children.

Additionally, on July 8, 1997, Defendant Jordan was advised that S.L.L. had been sexually acting out with a male child at his summer camp. And on August 29, 1997, Defendant Jordan was advised that S.L.L. had alleged that he had been sexually abused by a foster child at his foster home. At both the time of both incidents Defendant Jordan knew that S.L.L. was residing with other foster children at his foster care placement. And after both incidents Defendant Jordan failed to institute a plan of care or safety plan for any of the children to ensure their safety and ensure that they would not be reabused or victimized other children.

In addition to the knowledge of these incidents that occurred prior to the Plaintiffs placement with the Shicks, Defendant Jordan knew that when H.A.L. and S.L.L. were placed in the Shick foster home there were at least three other older foster and/or adoptive children already residing in that home, including R.S., J.S., and D.C. Despite knowing the Plaintiffs' prior incidents, Defendant Jordan failed to perform a background check on all children in the Shick foster home and/or disregarded adverse information about the sexual abuse/ perpetration histories regarding the other children already residing in the home.

Plaintiffs' allegations, taken as true, fail to establish a constitutional violation and a § 1983 claim. Plaintiffs have failed to allege that Defendant Jordan knew that H.A.L. and S.L.L. were at significant risk of serious harm in the Shick home. Plaintiffs have alleged that Defendant Jordan knew of incidents prior to placement in the Shick home and then subsequently failed to perform the required background checks on the children in the Shick. The knowledge of incidents that occurred in 1997 is insufficient to establish that Defendant Jordan knew that Plaintiffs were at a serious risk

of harm in the Shick home in 1999. Plaintiffs have failed to allege that Defendant Jordan was objectively aware that H.A.L. and S.L.L. were at a of risk of sexual abuse from the children residing in the Shick. Unlike Defendants Foltz and Jones, Plaintiffs have failed to allege that Defendant Jordan had learned that children in the Shick foster home had sexually acted out or that she had documented child-on-child sexual assault incidents between children residing in the Shick home. Accordingly, the first of the three-prong test to establish deliberate indifference has not been met.

Moreover, Defendant Jordan's failure to institute safety plans and to perform background checks on the children in Shick home may indeed have been negligent. Yet, while negligent conduct is disturbing and highly regrettable, it is insufficient to pierce Defendant Jordan's qualified immunity. "Deliberate indifference is not the same thing as negligence or carelessness." Ray v. Foltz, 370 F.3d 1079, 1083 (11th Cir. 2004). "[A] state official acts with deliberate indifference only when [s]he disregards a risk of harm of which [s]he is *actually aware*." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). As there are no facts to show that Defendant Jordan both knew of and disregarded a risk of sexual abuse to Plaintiffs in the Shick home, Defendant's Motion to Dismiss (Doc. No. 42) is **GRANTED**.

**Conclusion**

Accordingly, upon due consideration it is **ORDERED AND ADJUDGED**:

(1) Defendant Foltz's Motion to Dismiss (Doc. No. 15) is **DENIED** as to Plaintiffs H.A.L. and S.L.L and is **GRANTED** as to Plaintiff J.H.L.;

(2) Defendant Jones's Motion to Dismiss (Doc. No. 17) is **DENIED** as to Plaintiffs H.A.L. and S.L.L. and is **GRANTED** as to Plaintiff J.H.L.; and

(3) Defendant Jordan's Motion to Dismiss (Doc. No. 42) is **GRANTED** as to all Plaintiffs.

**DONE AND ENTERED** at Jacksonville, Florida, this 11 day of April, 2006.

HARVEY E. SCHLESINGER
United States District Judge

**Copies to:**
Brian J. Cabrey, Esq.
Donald M. Maciejewski, Esq.
Howard M. Talenfeld, Esq.
John F. Dickinson, Esq.
J. Ray Poole, Jr., Esq.