UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


H.A.L., et al.,

                    Plaintiffs,

v.                                          Case No.  3:05-cv-873-J-33MCR

FOLTZ, et al.,

                    Defendants.

_____/

**ORDER**

This cause comes before the Court pursuant to three motions to dismiss filed by the defendants on August 20, 2007.[1]  The plaintiffs filed three responses, one to each defense motion, on September 17, 2007.  (Doc. # 99; Doc. # 100; Doc. # 101.)  For the reasons stated below, these motions are due to be denied.

**I.    Background**

The plaintiffs, H.A.L., J.H.L., and S.L.L., are minor children[2] who were in foster care with the Florida Department of Children and Family Services (DCFS).  Foltz, Jones, and Jordan are

_____

[1]Each defendant filed a motion to dismiss.  The first is Defendant Deborah Jones' Motion to Dismiss Plaintiffs' Third Amended Complaint.  (Doc. # 94.)  The second is Defendant Virginia Jordan's Motion to Dismiss Plaintiffs' Third Amended Complaint. (Doc. # 95.)  The last is Defendant Ed Foltz's Motion to Dismiss Plaintiffs' Third Amended Complaint.  (Doc. # 96.)

[2]The plaintiffs currently range in age from twelve to sixteen years old.  (See Doc. # 93, at 1.)

1

three employees of the DCFS who had some responsibility for overseeing the foster care provided to the plaintiffs.  In May 2005, the plaintiffs sued the three employees for failing to prevent sexual abuse the plaintiffs suffered while in foster care. Alleging a cause of action under 42 U.S.C. § 1983 for deprivation of rights guaranteed by the Fourteenth Amendment (Doc. # 1-2, at 2), the plaintiffs submitted that the DCFS employees knew there was a substantial risk that the plaintiffs would be sexually abused, but that the employees failed to take action to protect the plaintiffs.  After plaintiffs filed an amended complaint in August 2005, the DCFS employees removed the action to federal court in September 2005.  (Doc. # 1.)

In October 2005, two of the employees moved to dismiss.  (Doc. # 15; Doc. # 17.)  In March 2006, the third employee moved to dismiss.  (Doc. # 42.)  In April 2006, when this case was pending before Judge Schlesinger, the Court granted all defense motions as to J.H.L., and granted Jordan's motion as to all the plaintiffs. As a result, none of J.H.L.'s claims survived, and Jordan was completely relieved.  Judge Schlesinger denied Jones' and Foltz' motions as to the claims of H.A.L. and S.L.L.  On March 7, 2007, this Court entered an order explaining that the dismissed claims were dismissed without prejudice, and granting the plaintiffs leave to file an amended complaint.  (Doc. # 72.)  The plaintiffs filed a second amended complaint on March 27, 2007, (Doc. # 73), and the

employees responded with motions to dismiss (Doc. # 74; Doc. # 75; Doc. # 76).   The plaintiffs again sought leave to amend their complaint (Doc. # 86), which the Court granted (Doc. # 92).   On August 3, 2007, the plaintiffs filed their third amended complaint. (Doc. # 93.)  This is the operative complaint, and the defendants have moved to dismiss it.

## II.   Law

### A.   Standard of Decision in the Qualified Immunity Context

On a motion to dismiss, a district court must accept as true all the allegations in the complaint and construe them in the light most favorable to the plaintiff.  Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).   A court must favor the plaintiff with all reasonable inferences from the allegations in the complaint.   Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").  The complaint may not be dismissed if the factual allegations, taken as true, suffice to "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007).

The Eleventh Circuit imposes a heightened pleading standard in § 1983 cases against public officials who may be able to assert a defense of qualified immunity.   Compare Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) ("In examining the factual allegations

3

in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity.") with Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004) (explaining that Supreme Court overturned "any heightened pleading requirements in § 1983 actions against entities that cannot raise qualified immunity as a defense," but noting that heightened pleading is still required in Eleventh Circuit where defendants may be able to set up defense of qualified immunity).   To meet the Eleventh Circuit's heightened standard, a complaint must allege "with some specificity" the facts supporting its claim. GJR Invs. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998) ("[T]his circuit . . . has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim."); accord Jorge T. v. Fla. Dep't of Children & Families, 2007 U.S. App. LEXIS 24168, at *3 (11th Cir. Oct. 12, 2007); Gonzalez, 325 F.3d at 1235.

Even if a plaintiff states a claim against a public officer, though, the officer "may nevertheless be shielded from liability for civil damages if [the officer's] actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818

4

(1982)).  This qualified immunity doctrine ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful."  <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001).  For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Hope</u>, 536 U.S. at 739 (internal quotation marks omitted).  Courts must first decide whether a complaint states a claim for violation of a constitutional right.  <u>Saucier</u>, 533 U.S. at 201.  Only then can a court address the qualified immunity question: whether the right was clearly established.  <u>Id.</u>

**B.  Deliberate Indifference to the Rights of Foster Children**

Foster children in state custody have a Fourteenth Amendment right to physical safety.  <u>Ray v. Foltz</u>, 370 F.3d 1079, 1082 (11th Cir. 2004).  "The state's action in assuming the responsibility of finding and keeping the child in a safe environment placed an obligation on state officials to ensure the continuing safety of that environment."  <u>Id.</u>  Liability may be imposed upon a public official who is deliberately indifferent to this obligation.  <u>Id.</u> at 1083.  In <u>Ray v. Foltz</u>, the Eleventh Circuit articulated the standard for deliberate indifference:

> Deliberate indifference is not the same thing as negligence or carelessness.  On the contrary, the Supreme Court has made clear that a state official acts with deliberate indifference only when he disregards a risk of harm of which he is <u>actually aware</u>.  Defendants, then, cannot be liable to the [plaintiffs] unless they both

5

knew of and disregarded an excessive risk of abuse to
[the victimized foster child].

Following this guidance, we have stated that in
order to establish deliberate indifference, plaintiffs
must be able to allege (and prove at trial) that the
defendant (1) was objectively aware of a risk of serious
harm; (2) recklessly disregarded the risk of harm; and
(3) this conduct was more than merely negligent.

Id. (internal citations omitted).

"Whether [defendant DCFS employees] had the requisite
knowledge of a substantial risk is a question of fact subject to
demonstration in the usual ways, including inference from
circumstantial evidence, and a factfinder may conclude that
[defendant DCFS employees] knew of a substantial risk from the very
fact that the risk was obvious." Farmer v. Brennan, 511 U.S. 825,
842 (1994) (internal citation omitted).[3]  Thus, if a victimized
foster child can show that a substantial risk of sexual assault by
other foster children was well-known and that defendant DCFS
employees had been exposed to information concerning that risk, the
factfinder could conclude that the DCFS employees had actual
knowledge of the risk.  Id. at 842-43.  In such a case, a DCFS
employee "would not escape liability if the evidence showed that he
merely refused to verify underlying facts that he strongly

_____

[3]In Farmer, the Supreme Court addressed allegations that
prison guards were deliberately indifferent to a prisoner's Eighth
Amendment rights.  "[T]he Eighth Amendment's deliberate
indifference jurisprudence is applicable to the Fourteenth
Amendment due process rights of . . . foster children . . . ."
Lavender v. Kearney, 206 F. App'x 860, 863 n.2 (11th Cir. 2006)
(citing Ray v. Foltz, 370 F.3d 1079, 1083 (11th Cir. 2004)).

suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist . . . ." Id. at 843 n.8. Just because a factfinder could infer from such facts actual knowledge of a substantial risk does not mean that the factfinder must draw such an inference. Id. at 844. But it does mean that a complaint pleading specific facts sufficient to justify such an inference will overcome a motion to dismiss arguing that the complaint fails to allege the defendants actually drew the inference.

### III. The Third Amended Complaint

The third amended complaint alleges that H.A.L., J.H.L., and S.L.L. were sexually assaulted by two older children at the foster home of Mr. and Mrs. Shick. (Doc. # 93, at 2, 19.) The first older child, D.C., assaulted all three plaintiffs. (Doc. # 93, at 2.) The second, R.S., assaulted only H.A.L. and S.L.L. (Doc. # 93, at 2.) The complaint alleges that the plaintiffs were sexually assaulted throughout their stay at the Shick home. (Doc. # 93, at 19.) J.H.L. resided in the Shick home from January 7, 1999, to January 28, 1999. (Doc. # 93, at 14.) J.H.L. then received after-school care at the Shick home from February to October 1999. (Doc. # 93, at 15.) H.A.L. and S.L.L. were placed in the Shick home on March 5, 1999, (Doc. # 93, at 15) and were removed from the home in May 2000 (Doc. # 93, at 19).

Foltz was a licensing counselor employed by the DCFS to evaluate and license foster homes. (See Doc. # 93, at 2-3.) Foltz

7

"had the ability, authority and the means to disapprove any foster home or foster home placement in which there was a substantial risk of serious harm and to recommend the removal of any child from an unsafe placement." (Doc. # 93, at 3.) Jones was a licensing supervisor with "the ability, authority and the means to disapprove any foster home or foster home placement in which there was a substantial risk of serious harm and to recommend the removal of any child from an unsafe placement." (Doc. # 93, at 5.) Jordan was a family services counselor assigned as the foster care counselor for the plaintiffs. (Doc. # 93, at 5, 12.) Jordan "had the ability, authority and the means to remove a child from a foster home placement in which there was a substantial risk of serious harm to the child." (Doc. # 93, at 6.)

Jordan was also the foster care counselor for D.C. (Doc. # 93, at 13.) D.C. was placed in the Shick foster home in May 1998 (Doc. # 93, at 13), at which time he was approximately fourteen years old (see Doc. # 93, at 13 (stating that D.C. was approximately fourteen in September 1998)). Jordan was "specifically advised that D.C. had a history of sexually aggressive behavior toward younger, more vulnerable children." (Doc. # 93, at 13.) D.C. remained in the Shick home until at least May 2000. (Doc. # 93, at 13.) On January 7, 1999, Jordan moved J.H.L. to the Shick home for temporary care. (Doc. # 93, at 14.) This temporary care ended on January 28, 1999, but J.H.L. continued

to receive after-school care at the Shick home between February 1999 and October 11, 1999. (Doc. # 93, at 15.) Jordan learned that D.C. had a history of sexually aggressive behavior prior to the time Jordan placed J.H.L. in the Shick home. (Doc. # 93, at 14.) Thus, when Jordan moved J.H.L. to the Shick home in January 1999, Jordan knew that a sexually aggressive teenager was living in the Shick home. On March 5, 1999, H.A.L. and S.L.L. were placed in the Shick home. (Doc. # 93, at 15.) In addition, the complaint alleges that Jordan knew "both Mr. and Mrs. Shick worked full-time outside the home and allowed R.S. and D.C., and/or other minor children to provide after-school supervision to the younger adopted and foster children in their home during 1999." (Doc. # 93, at 14.) Thus, at the time the plaintiffs lived in the Shick home, Jordan knew that a sexually aggressive teenager lived there. The complaint alleges that Jordan took no action to ensure that D.C. would not sexually assault the plaintiffs. (Doc. # 93, at 14–16.)

The complaint further alleges that R.S. sexually assaulted J.S. on July 4, 1999, at the Shick home. (Doc. # 93, at 17.) J.S. had been placed in the Shick home in September 1998 at the age of nine. (Doc. # 93, at 13.) At that time, R.S. was eleven years old. (Doc. # 93, at 13.) Jones was advised of the sexual assault in July 1999. (Doc. # 93, at 17.) Foltz learned about the sexual assault some time before September 1999. (Doc. # 93, at 17.) By September 1999, Jones and Foltz both knew that Mr. and Mrs. Shick

allowed R.S. and D.C. to provide unsupervised after-school care to H.A.L., S.L.L., and J.H.L.  (Doc. # 93, at 18.)  Nevertheless, Jones and Foltz recommended in September 1999 that the Shick home be relicensed, without limitation.  (Doc. # 93, at 18.)  In fact, Jones and Foltz recommended that the Shick home receive an increase in its licensed capacity.  (Doc. # 93, at 18.)  The complaint alleges that Jones and Foltz did not ensure that a safety plan was established (Doc. # 93, at 18) and did not take immediate action to ensure the plaintiffs' safety (Doc. # 93, at 21, 23, 25, 27, 29, 31).

The plaintiffs claim these facts show that each defendant was deliberately indifferent to the plaintiffs' right to be free from an unreasonable risk of harm while in state custody.  (Doc. # 93, at 20-21, 23, 25, 27, 29, 31, 34, 36, 39.)

## IV.  The Defendants' Arguments and Judge Schlesinger's Order

All three defendants make essentially the same arguments they made in their motions to dismiss before Judge Schlesinger in October 2005 and March 2006.  They argue first that the complaint fails to state a claim for deliberate indifference, and second that the defendants are all entitled to qualified immunity.  (Doc. # 94, at 3; Doc. # 95, at 3; Doc. # 96, at 3.)

In his April 2006 Order, Judge Schlesinger found that H.A.L. and S.L.L. stated a claim against Foltz and Jones.  (Doc. # 49.) Judge Schlesinger looked to the allegation that Foltz learned of

and documented sexual assault incidents between R.S. and J.S. (Doc. # 49, at 12.)  Judge Schlesinger determined the complaint alleged that, in September 1999, Foltz knew that "H.A.L. and S.L.L. were residing in a home with two older male sexually aggressive foster and/or adoptive children.  Notwithstanding this knowledge, Defendant Foltz recommended the relicensure of the home and an increase in the licensed capacity." (Doc. # 49, at 12.)  Judge Schlesinger concluded, "Based on these facts, Defendant Foltz knew that H.A.L. and S.L.L. were at a significant risk of serious harm in the Shick home.  By placing, and then leaving, H.A.L. and S.L.L. in the Shick home, Defendant Foltz was deliberately indifferent to a known risk of sexual abuse." (Doc. # 49, at 12.)  Judge Schlesinger next examined the allegation that Jones knew by September 1999 about the sexual assault between R.S. and J.S. (Doc. # 49, at 14.)  As with Foltz, Judge Schlesinger explained that H.A.L. and S.L.L. had stated a claim against Jones. (Doc. # 49, at 14.)  As to both defendants, Judge Schlesinger concluded that qualified immunity did not bar the lawsuit "because the allegations taken as true establish a constitutional violation and because the constitutional right was clearly established." (Doc. # 49, at 12, 14.)

Judge Schlesinger determined that J.H.L. failed to state a claim against either Foltz or Jones because the complaint failed to allege when J.H.L. was placed in the Shick home. (Doc. # 49, at

11

13, 14-15.)  The complaint did not allege that J.H.L. was in the Shick home after either Foltz or Jones learned of the risk of sexual assault.

Judge Schlesinger determined no plaintiff had stated a claim against Jordan because the complaint did not allege that Jordan learned that any child in the Shick home was sexually aggressive. (Doc. # 49, at 17.)  Judge Schlesinger had no reason to address the question of whether qualified immunity protected Jordan.

Now rearguing that the complaint fails to state a claim, the defendants posit that the sexual assault incidents of which they knew were insufficient to support a claim of deliberate indifference.[4]  (Doc. # 94, at 10; Doc. # 95, at 10; Doc. # 96, at 10.)  Here, they identify two unpublished opinions issued by the Eleventh Circuit since Judge Schlesinger entered his Order. According to the defendants, these opinions clarify that a claim of deliberate indifference cannot be supported by weak information suggesting a risk of harm.  The defendants maintain that these opinions require the Court now to reach a different result than Judge Schlesinger reached as to Foltz and Jones.[5]

---

[4]The defendants also seek to re-raise every argument earlier raised before, and rejected by, Judge Schlesinger.  These arguments are without merit, and the Court need not discuss them further.

[5]The defendants also submit that they can be liable only if they "had <u>actual knowledge</u> of abuse." (Doc. # 94, at 5; Doc. # 95, at 5; Doc. # 96, at 5.)  They propose, "Absent an allegation that [each defendant] actually drew an inference . . . that H.A.L., J.H.L. and S.L.L. were being sexually abused by R.S. and D.C. in

Finally, the defendants all reargue that they are entitled to qualified immunity because the contours of the right to physical safety in foster homes were not sufficiently clear that a reasonable official would not have understood that what the defendants did violated that right.

## V.  Discussion

### A.  The Plaintiffs Have Remedied the Deficiencies Identified in Judge Schlesinger's Order

Judge Schlesinger's order dismissed all of J.H.L.'s claims because the complaint did not allege that J.H.L. was in the Shick home after the defendants learned facts suggesting that there was a substantial risk of sexual assault in the Shick home.  The third amended complaint remedies that deficiency.  First, it alleges that Jordan "was the foster care counselor assigned to D.C.'s case prior

---

the Shick home, Plaintiffs' deliberate indifference claim against [each defendant] must fail."  (Doc. # 94, at 9; Doc. # 95, at 8; Doc. # 96, at 8.)  The defendants then point out that the complaint fails to allege that they actually inferred that the plaintiffs were being abused.  (Doc. # 94, at 12; Doc. # 95, at 12; Doc. # 96, at 12.)  The defendants have misidentified the pleading requirement.

The plaintiffs need not allege that the defendants actually inferred that the plaintiffs were being abused.  See Farmer v. Brennan, 511 U.S. 825, 842 (1994) (explaining that a plaintiff need not show that a defendant acted or failed to act believing that the plaintiff would be harmed).  Instead, the plaintiffs need only allege sufficient facts to justify the inference that the defendants knew of a substantial risk that the plaintiffs would be sexually assaulted.  Id. ("[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.");  Ray v. Foltz, 370 F.3d 1079, 1083 (11th Cir. 2004).

to his placement in the Shick foster home and was specifically advised that D.C. had a history of sexually aggressive behavior toward younger, more vulnerable children . . . ." (Doc. # 93, at 13.)  Thus, the Court finds that the third amended complaint alleges that Jordan knew D.C. had a history of sexually aggressive behavior before D.C. was placed in the Shick home in May 1998. This is sufficient to raise an inference that Jordan knew there was a substantial risk of sexual assault to any child younger than D.C. placed in the Shick home after May 1998.[6]

Second, the third amended complaint now alleges when J.H.L. was in the Shick home.  It alleges that J.H.L. was placed in the Shick home for temporary care from January 7 to January 28, 1999, and that J.H.L. received after-school care at the Shick home from February to October 11, 1999.  (Doc. # 93, at 14, 15.)  It further states that Jordan failed to take action to minimize the risk that J.H.L. would be sexually assaulted at the Shick home.  Thus, the third amended complaint now adequately states a claim that Jordan was deliberately indifferent to J.H.L.'s right to physical safety in her foster home.

Third, the third amended complaint also remedies the deficiencies in J.H.L.'s allegations against Foltz and Jones.  The

---

[6]The third amended complaint contains allegations of ample information available to DCFS employees suggesting a substantial risk of sexual assault against younger children placed in foster homes with older, sexually aggressive children. (See Doc. # 93, at 6–10.)

third amended complaint now alleges that Foltz and Jones knew J.H.L. received after-school care at the Shick home until October 11, 1999.  It alleges that both Foltz and Jones knew by September 1999 that R.S. sexually assaulted J.S. in July 1999.  This is sufficient to raise an inference that both Foltz and Jones knew by September 1999 that there was a substantial risk of sexual assault to any child younger than R.S. placed in the Shick home with R.S. The third amended complaint further states that neither Foltz nor Jones acted to minimize the risk of sexual assault to J.H.L.  Thus, the third amended complaint now adequately states a claim that Foltz and Jones were deliberately indifferent to J.H.L.'s right to physical safety in her foster home.

Finally, the third amended complaint remedies the deficiencies in H.A.L.'s and S.L.L.'s allegations against Jordan.  As discussed above, the third amended complaint alleges that Jordan knew D.C. had a history of sexually aggressive behavior before D.C. was placed in the Shick home in May 1998.  This is sufficient to raise an inference that Jordan knew there was a substantial risk of sexual assault to any child younger than D.C. placed in the Shick home after May 1998.  It further states that Jordan failed to take actions to minimize the risk that H.A.L. and S.L.L. would be sexually assaulted at the Shick home.  Thus, the third amended complaint now adequately states a claim that Jordan was deliberately indifferent to H.A.L.'s and S.L.L.'s rights to

15

physical safety in their foster home.

**B.   The Law Has Not Changed Since Judge Schlesinger's Order**

The defendants argue that the law has changed since Judge Schlesinger's order, now making clear that the information the defendants possessed did not support the inference that there was a substantial risk of sexual abuse in the Shick home.   The defendants point out that, since Judge Schlesinger entered his Order, the Eleventh Circuit decided <u>Nichols v. Maynard</u>.   204 F. App'x 826 (11th Cir. Nov. 6, 2006).   In that case, a foster child sued DCFS employees for failing to prevent sexual abuse by an older child.   <u>Id.</u> at 827.   The court found that the younger child had not stated a claim for deliberate indifference because he did not allege facts from which the inference could be drawn that the DCFS employees knew the older child posed a serious risk.   <u>Id.</u> at 829. The court explained:

> Assuming as we must at the motion to dismiss stage that Defendants had knowledge of the information contained in the DCF[S] records, the complaint does not show that this information alerted them to any serious risk of harm to [the younger child].   The complaint alleges that the records indicated that [the older child] had been the victim of child abuse and had once gotten into bed naked with another child without incident.   The complaint in no way alleges facts that would indicate that [the older child] had been sexually aggressive or otherwise violent with another child.   In short, the records indicate that [the older child's] part in sexual abuse had been as a victim, not an aggressor.

<u>Id.</u>

The defendants suggest the instant case is governed by

_Nichols_.   That is, the information allegedly possessed by the defendants did not alert them to any serious risk of harm to the plaintiffs.  Not so.  The _Nichols_ defendants possessed information showing that the older child had in the past been a _victim_ of abuse.   In this case, by contrast, the defendants allegedly possessed information showing that D.C. and R.S. had been _aggressors_.  This critical distinction, and not any change in the law, explains the result in _Nichols_.

The defendants additionally point to _Lavender v. Kearney_, also decided since Judge Schlesinger's Order.  206 F. App'x 860 (11th Cir. 2006).   In that case, a civilly committed inmate sued an official at the civil commitment facility for failing to prevent an attack by another inmate.   _Id._ at 861.   The aggressor inmate had been placed in disciplinary segregation after he injured another inmate.   _Id._   The official was a member of the committee that decided to release the aggressor inmate from disciplinary segregation.   _Id._ at 862.   The plaintiff argued that the official was deliberately indifferent to the plaintiff's right to physical safety because the official knew the aggressor inmate posed a substantial risk of harm to other inmates.   _Id._ at 863.   The Eleventh Circuit affirmed summary judgment for the official because the official presented evidence that he had no knowledge of the risk posed by the aggressor inmate and the plaintiff produced no verifiable evidence to refute that.   _Id._  Moreover, the plaintiff

17

produced no evidence challenging the official's contention that the aggressor inmate was released only after an administrative committee concluded he was no longer a threat.  Id.  The court noted the official may have known of the aggressor inmate's general violent tendencies, but concluded that this was insufficient: "General knowledge about an inmate's violent tendencies, without more specific information about the risk, does not constitute deliberate indifference."  Id.

Lavender, also, is inapposite.  In that case, the official may have possessed general information about the aggressor inmate's violent tendencies, but an administrative committee had already determined the aggressor inmate was not a threat.  The Eleventh Circuit required more specific information about the risk.  In the case at bar, by contrast, the defendants had highly specific information about the risk posed by D.C. and R.S.  According to the complaint, the defendants knew these older children were sexually aggressive based on specific past conduct.  The defendants knew that these older, sexually aggressive children were providing unsupervised after-school care to the younger foster children in the Shick home.  And the defendants knew older, sexually aggressive children posed a risk to younger children.  This is not mere general knowledge of violent tendencies.  This distinction, and not some change in the law, explains the result in Lavender.

**C.   Qualified Immunity Does Not Require Dismissal of These Claims**

18

The defendants correctly cite case law establishing the rule that qualified immunity will be available to a defendant unless the contours of the violated right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." (Doc. # 94, at 14; Doc. # 95, at 14; Doc. # 96, at 14 (all quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)).) The defendants argue that, though the right to physical safety in a foster home was clearly established (Doc. # 94, at 13 n.3; Doc. # 95, at 13 n.3; Doc. # 96, at 13 n.3), the contours of that right were not sufficiently clear to put the defendants on notice that what they did or failed to do would violate that right. In other words, at the relevant time, a reasonable DCFS employee charged with the safety of a foster child would not have known that the failure to act in response to a perceived risk of sexual assault against that foster child would violate that foster child's right to physical safety.

In 1987, the Eleventh Circuit held that a child in foster care may maintain an action against state officials who were deliberately indifferent to the risk of abuse in the foster home. Taylor v. Ledbetter, 818 F.2d 791, 797 (11th Cir. 1987). In 2004, the Eleventh Circuit rejected the precise argument the defendants now raise, holding that Taylor put defendants on notice that deliberate indifference to the risk of harm to a foster child would subject them to potential liability. Ray v. Foltz, 370 F.3d 1079,

19

1082–83 (11th Cir. 2004).  The court explained:

> We reject defendants' argument that "Taylor merely
> generally establishes that a foster child's
> constitutional rights may be violated," while not making
> it "apparent that any specific conduct violates a foster
> child's rights."  Even were the facts of Taylor not
> substantially similar to those here, Taylor clearly
> established that foster children have a liberty interest,
> pursuant to the substantive due process clause of the
> fourteenth amendment, in being free from the type of
> abuse inflicted upon [the foster child in this case].
> Although [the foster child in this case] was not reduced
> to a coma as was the child in Taylor, his injuries were
> sufficiently similar that no reasonable argument can be
> made that Taylor did not put defendants on notice that
> deliberate indifference to the risk of this harm would
> subject them to potential liability.

Id.  While the abuse in both Taylor and Ray was inflicted by the

foster parents, rather than by other children, these cases are

fundamentally similar to the case at bar.  So long as the

defendants knew of a serious risk, it matters not that the risk

came from other children in the foster home instead of the foster

parents.  See Hope v. Pelzer, 536 U.S. 730, 741 (2002) (noting that

"earlier cases involving 'fundamentally similar' facts can provide

especially strong support for a conclusion that the law is clearly

established").  Taylor established the rule that deliberate

indifference to a serious risk of harm to a foster child in the

foster home will open a DCFS employee to potential liability.  Ray

further affirmed that Taylor clearly established that rule, even as

to cases whose facts are not identical.  Thus, the Court finds that

qualified immunity does not merit dismissal of this case.  At this

stage, the Court decides only that the contours of the right were

sufficiently clear that a reasonable official would know that it was impermissible to react as the plaintiffs <u>allege</u> the defendants reacted in the face of the clear risk in this case.

## VI.  Conclusion

The plaintiffs have adequately stated claims against all defendants for deliberate indifference to the plaintiffs' right to physical safety in their foster home.   Additionally, qualified immunity does not require dismissal of this case.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

The defendants' motions to dismiss (Doc. # 94; Doc. # 95; Doc. # 96) are hereby **DENIED**.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this <u>6th</u> day of December 2007.

_Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel of Record